UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMIE DAVID STITES, <br><br> Plaintiff, <br><br> v. <br><br> CHERYL STRANGE, et al., <br><br> Defendant. | CASE NO. 3:24-cv-05027-MJP-BAT <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff, a prisoner currently confined at Clallam Bay Corrections Center, proceeds *pro se* in this 42 U.S.C. 1983 civil rights action. Plaintiff's complaint was recently served, on January 22, 2024, and defendants have not yet filed an answer nor has their time to do so expired. Dkt. 5. Plaintiff now moves for a temporary restraining order (TRO) and preliminary injunction. Dkt. 6.

For the reasons below, the Court recommends that plaintiff's motion for TRO and preliminary injunction (Dkt. 6) be DENIED.

## BACKGROUND

Plaintiff asserts he has previously been diagnosed with an opioid use disorder and was prescribed daily buprenorphine pursuant to a Medication Assisted Therapy (MAT) program while he was incarcerated at Kitsap County Jail from July 26, 2023, to October 12, 2023. Dkt. 4 at 5. Plaintiff states that he was transferred to Washington Department of Corrections (DOC)

REPORT AND RECOMMENDATION - 1

custody on October 12, 2023, and that on October 20, 2023, his buprenorphine prescription was terminated, and he was given a single injection of Sublocade – a long-acting injectable form of buprenorphine -- to help him taper off of buprenorphine. *Id.* at 5, 24, 30. Plaintiff indicates this was done pursuant to a DOC policy requiring that individuals be tapered off buprenorphine if they will be incarcerated with DOC for six months or longer. *Id.* at 5, 9. Plaintiff alleges this DOC policy violates the Americans with Disabilities Act (ADA) and the Eighth Amendment. *Id.* Plaintiff names Cheryl Strange, Secretary of the DOC, and Joyce Ingle, Correction Specialist with Opioid Response Unit, as defendants in this action. *Id.* at 3.

Plaintiff requests the Court issue a TRO and preliminary injunction requiring the defendants to prescribe him buprenorphine in the same manner he was prescribed while he was at Kitsap County Jail. Dkt. 6.

Plaintiff indicates he is concerned he is at a greater risk of relapse or overdose at some point in the future if he is not taking buprenorphine. Dkt. 4 at 14, 22; Dkt. 7 at 3. Plaintiff states that he has previously relapsed and overdosed on opioids while he was taking buprenorphine in the past but that he feels this time the prescription was helping him stay stable. Dkt. 4 at 7. Plaintiff indicates he has an earned release date of June 23, 2024, but that he may be released to a work camp in April 2024, and he is concerned about being released without an MAT/buprenorphine prescription in place. Dkt. 4 at 20; Dkt. 7 at 3-4.

## DISCUSSION

**A.     Relevant Legal Standards**

Under the Prison Litigation Reform Act ("PLRA"),

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

REPORT AND RECOMMENDATION - 2

18 U.S.C. § 3626(a)(1)(A).

The purpose of preliminary injunctive relief is to preserve the status quo or prevent irreparable injury pending the resolution of the underlying claim. *Sierra On-line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "A plaintiff seeking a preliminary injunction must establish" (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, (2008). The Ninth Circuit also allows for the "serious questions" variation of the test, where "a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012).

Furthermore, where a plaintiff "seeks a mandatory injunction, they must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed. *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (internal citation and quotation marks omitted). "A mandatory injunction orders a responsible party to take action," while in contrast a "[a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (internal citations and quotation marks omitted).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

REPORT AND RECOMMENDATION - 3

defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060.

In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or [] may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). However, "[m]ere

REPORT AND RECOMMENDATION - 4

negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* Mere differences of opinion between a prisoner and prison medical staff or between medical professionals regarding the proper course of treatment does not give rise to a § 1983 claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

The ADA applies to prisons and jails and prohibits discrimination against disabled or handicapped persons. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). The ADA provides a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"To state a claim of disability[1] discrimination under Title II [of the ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated

---

[1] The term "disability" under the ADA means, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

REPORT AND RECOMMENDATION - 5

against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

"The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty*, 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.... The ADA does not create a remedy for medical malpractice.")) *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "[C]ourts repeatedly have held that an ADA claim cannot be based on medical/dental treatment decisions." *Whitall v. Munk*, No. 20-CV-03415-CRB (PR), 2021 WL 4442648, at *11 (N.D. Cal. Sept. 28, 2021), *aff'd*, No. 21-16797, 2023 WL 4397949 (9th Cir. July 7, 2023) (citing *Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (Rehabilitation Act (RA), like ADA, was never intended to apply to decisions involving medical treatment); *Fitzgerald v. Corr. Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) (prisoner's claims under RA and ADA properly dismissed for failure to state claim because they were based on medical treatment decisions)).

**B.     Analysis**

Plaintiff fails to show at this early stage of the litigation that the law and facts clearly favor his position, that he is likely to succeed on the merits, or that there are significant questions going to the merits, of his claims. Defendants have recently been served with the complaint in this case and have not yet appeared or filed an answer nor has their time to do so expired. Plaintiff does not sufficiently show at this point, based solely on his complaint and his own declaration, that DOC's failure to maintain him on a buprenorphine regimen/MAT, rather than

tapering him off of buprenorphine with an injection of Sublocade and managing withdrawal symptoms through other medications[2], constitutes more than a disagreement in the course of treatment, or constitutes a medically unacceptable course of treatment under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. As noted above, claims based on medical treatment decisions fail to state a claim under the ADA, and a mere disagreement with a course of medical treatment is insufficient to state a claim under the Eighth Amendment. As such, plaintiff fails to satisfy this requirement for issuance of a TRO or preliminary injunction at this stage.

Plaintiff has also not shown a likelihood of irreparable harm. To meet the "irreparable harm" requirement, plaintiff must do more than allege imminent harm; he must demonstrate immediate threatened injury. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff must demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine*, 844 F.2d at 674-75; *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

Here, plaintiff indicates he is concerned he is at a greater risk of relapse or overdose at some point in the future if he is not taking buprenorphine. Dkt. 4 at 14, 22; Dkt. 7 at 3. The Court notes that plaintiff had not been taking buprenorphine for several months at the time he filed this

---

[2] The Court notes that plaintiff's exhibits indicate that if withdrawal symptoms occur as an individual is tapered off of buprenorphine DOC medical staff can treat these symptoms "with other medications." Dkt. 4 at 30.

REPORT AND RECOMMENDATION - 7

action this month. Plaintiff makes general reference to withdrawal symptoms but does not allege these symptoms are not being medically addressed. Dkt. 4 at 5. Plaintiff also does not allege that there are no other safeguards or support mechanisms in place to manage his addiction recovery. The Court notes that plaintiff also acknowledges that he has previously relapsed and overdosed on opioids in the past even while he was taking buprenorphine.

Plaintiff also indicates he has an earned release date of June 23, 2024, but that he may be released to a work camp in April 2024, and he is concerned about being released without an MAT in place. Dkt. 4 at 20; Dkt. 7 at 3-4. However, the record appears to indicate that in most DOC facilities patients can be inducted back onto an MAT program as early as 90 days prior to their release, and that if this is not available at their facility, that DOC will assist the patient in locating a local MAT appointment upon release. Dkt. 4 at 31, 42.

Based on the current record, plaintiff fails to demonstrate an immediate threatened injury. As such, plaintiff fails to satisfy this requirement for issuance of a TRO or preliminary injunction.

The Court also notes plaintiff has not adequately shown at this stage that the balance of the equities tip in his favor or that issuance of an injunction would be in the public interest. *See Winter*, 555 U.S. at 20; *Lopez*, 680 F.3d at 1072.

## CONCLUSION

For the reasons above, plaintiff has not established a TRO or preliminary injunction is appropriate at this stage and therefore, plaintiff's motion (Dkt. 6) should be DENIED.

//

//

//

REPORT AND RECOMMENDATION - 8

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters an order in the case.

Objections, however, may be filed and served upon all parties no later than **February 13, 2024.** The Clerk should note the matter for **February 16, 2024**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 30th day of January, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge